MASTERSON v. ROSS et al.

(Court of Civil Appeals of Texas. El Paso. Jan. 16, 1913.)

1. VENDOR AND PURCHASER (§ 220*)—VENDOR'S LIEN—"BONA FIDE PURCHASER."

Where a purchaser from a vendee indebted to the original vendor had no notice of such indebtedness, and paid adequate consideration, he was a bona fide purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 461–465, 720; Dec. Dig. § 220.*

For other definitions, see Words and Phrases, vol. 1, pp. 825–830; vol. 8, p. 7591.]

2. BILLS AND NOTES (§ 359*)—INDORSEMENT—BONA FIDE HOLDER.

One who in good faith takes by indorsement negotiable paper before maturity in payment of an existing debt is a purchaser for value and in the usual course of trade.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 924–936; Dec. Dig. § 359.*]

3. BILLS AND NOTES (§ 362*)—INDORSEMENT—BONA FIDE HOLDER.

Where one acquires in good faith and for value negotiable paper, it is immaterial whether a subsequent holder thereof pays value, or has notice at the time he acquires it.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 937–943; Dec. Dig. § 362.*]

---

**4. BILLS AND NOTES (§ 357\*)—INDORSEMENT—BONA FIDE HOLDER.**

A transfer of negotiable paper as collateral for a debt less in amount than the paper is in due course of trade and for a valuable consideration.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 909–912, 961; Dec. Dig. § 357.\*]

**5. APPEAL AND ERROR (§ 1033\*)—ERROR IN FAVOR OF PARTY COMPLAINING.**

A party may not complain of an error in rendering judgment in his favor.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.\*]

**6. APPEAL AND ERROR (§ 742\*)—QUESTIONS REVIEWABLE—ASSIGNMENTS OF ERROR.**

Assignments of error, each of which complains of a distinct ruling of the trial court, and involves different subjects not germane to each other, cannot be grouped.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.\*]

**7. APPEAL AND ERROR (§ 742\*)—QUESTIONS REVIEWABLE—BRIEFS—RULE OF COURT.**

Under Court of Civil Appeals rule 30 (142 S. W. xiii), providing that appellant shall in his brief make a preliminary statement of the nature and the result of the suit, and follow the same by his assignments, and that each point under each assignment shall be stated as a proposition, unless the assignment may sufficiently disclose the point, grouped assignments of error complaining of the refusal of distinct requested charges not germane to each other followed by propositions under the last assignment, none of which referred to any of the assignments, and followed by a statement failing to set out the refused charges or to state .the substance thereof, will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.\*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Branch T. Masterson against J. O. Ross and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Masterson & Masterson, of Houston, and Lewis Fisher, of Galveston, for appellant. Geo. W. Graves, Elliott Cage, and Baker, Botts, Parker & Garwood, all of Houston, for appellees.

McKENZIE, J. Appellant, Branch T. Masterson, brought this suit in the district court of Harris county against F. E. Pye, J. O. Ross, and Peters Bros., the latter being a partnership composed of H. W. Peters, Lee Peters, Albert Peters, and Ernest Peters, for the recovery of an interest in a series of vendor's lien notes given by Peters Bros. to Pye for part purchase money of a tract of land commonly known as the Tankersley Oyster Creek plantation, or, in the alternative, to recover against Pye and Ross a stipulated sum alleged to be due him. Peters Bros. in their answer made H. Masterson a party to the suit, and prayed for judgment over against Pye, Ross, and said H. Masterson for any amount that the appellant should recover against them. Ross in his answer sought judgment against H. Masterson, in event of appellant's recovery against him,

for an amount to be prorated according to the amount of notes held by each. Peters Bros. and Ross each pleaded as against appellant a judgment which appellant had recovered against Pye in the district court of Galveston county as a bar to the appellant's right to recover in this suit. Pye, though having been duly cited, failed to appear and answer, and judgment by default was entered against him. The appellant asks for no recovery against H. Masterson. The defendants, except Pye, in addition to the foregoing pleas, filed their demurrers, general denials, and the defense of innocent purchaser for value without notice. The cause was tried by a jury, the court peremptorily instructing the jury to return verdict in favor of the defendants, and, upon the jury verdict, judgment was duly entered, from which judgment the appellant appeals.

The material facts in evidence are undisputed, and are substantially as follows: On January 1, 1910, appellant owned 1,000 acres of land in Brazoria county, known as the Tankersley Oyster Creek plantation, which he contracted to sell to Pye for $25,000, $10,000 to be paid in cash and the balance in two vendor's lien notes to be executed by Pye, each note for $7,500, to become due in one and two years from said date, respectively. Accordingly appellant prepared and executed a deed of that date to Pye, reciting the consideration mentioned, and prepared for Pye's signature the two notes and deposited the deed and the two notes, which were at said time unsigned, in a Houston bank, the deed and notes to be held in escrow until Pye had paid into the bank for appellant the $10,000 and had signed the notes, when the bank should then deliver the deed to Pye, the $10,000 and the notes to appellant. Pye failed to make the payment of the cash consideration, but at separate times paid into the bank $1,000 and $2,000. The deed, the unsigned notes, and the $3,000 so paid into the bank by Pye remained in the bank until April 30, 1910, when appellant and Pye finally consummated the trade, the appellant accepting in lieu of the $10,000 cash consideration mentioned in the deed, the $3,000 which had been paid into the bank, Pye's note, indorsed by H. Masterson, for $7,000, payable at six months, Pye's note for $333.33, which represented the interest on $7,000, from January 1, 1910, and Pye's promise to divide with appellant the proceeds of any sale of said plantation after deducting the $25,000 which represented the purchase price of said land to Pye. The original deed, without change as to the consideration, was then delivered to Pye, and was filed for record May 2, 1910.

It appears that in March, 1910, Pye commenced negotiations with Peters Bros. to sell them the Tankersley Oyster Creek plantation for $35,000, which sale was finally consummated on June 20, 1910. Pye executed

and delivered his warranty deed of that date to Peters Bros., the deed reciting a consideration of $4,300 cash paid, and six vendor's lien notes aggregating $32,700 for the balance of the unpaid purchase money, the notes being of even date with the deed and falling due at different times. At the time of closing with Peters Bros., Pye had failed to clear the title to the plantation, in accordance with the contract of sale, and had failed to pay off and obtain release of the two vendor's lien notes for $7,500 each, as mentioned in the deed from appellant to Pye, and in order to enable Pye to consummate the deal with Peters Bros., and to induce Peters Bros. to accept the title of Pye, Ross and H. Masterson joined with Pye in their joint obligation to Peters Bros. to pay the said two notes for $7,500 each, due the appellant, and to obtain a release of the vendor's lien securing said two notes and to bring suit in Brazoria county, where the land is located, to clear the title of certain defects, and further obligated themselves to warrant the title to the land to Peters Bros. When this sale was finally consummated, Pye assigned and transferred all of the series of notes which he had received from Peters Bros., with the vendor's lien securing them, to Ross, and the notes were delivered to H. Masterson by Peters Bros. upon written orders from Pye and Ross. Before the sale was consummated, whereby Peters Bros. acquired the land, Ross had paid for Pye, upon Pye's promise to transfer the notes to him, $11,000 to third parties, and, as before stated, to enable Pye to consummate the sale to Peters Bros., Ross signed with Pye and H. Masterson the obligation aforesaid. H. Masterson had also signed said obligation, and, in addition to this liability, it was arranged that he should negotiate a sale for Ross of the series of notes and receive therefor $2,500 brokerage fee, and was to receive $500 for the bringing of the suit to clear the title to the land of the defects, as provided for in said obligation. It also appears that Ross was indorser or surety for Pye for a large amount, and Pye was otherwise indebted to Ross, and the Peters Bros. notes were assigned and transferred by Pye to Ross as payment of the indebtedness which Pye was due Ross.

It further appears that H. Masterson failed to negotiate the notes, as was contemplated, after which he returned to Ross all of said notes on July 21, 1910, at the same time Ross obligating himself to protect H. Masterson against any loss by reason of the obligation which Pye, Ross, and H. Masterson had signed for Peters Bros. By a subsequent transaction, Ross assigned part of the notes to H. Masterson. Before the trial the $7,000 note, which was signed by Pye and indorsed by H. Masterson, payable to appellant, had been paid. It also appears that appellant had instituted suit and recovered a personal judgment against Pye in the district court of Galveston county upon the $333.33 note and upon Pye's agreement to share with appellant the half of the proceeds of the sale of said plantation, after deducting the $25,000 which said plantation had cost Pye. The evidence affirmatively shows that Peters Bros. bought of Pye the plantation without notice, either actual or constructive, as to any claim which appellant is alleged to have against Pye. The evidence is to the effect that Ross acquired the notes of Pye, and had no notice of the claim which appellant is alleged to hold against Pye, nor did H. Masterson have any notice of said claim.

[1] With the foregoing statement we will consider the issues as raised by the appellant in this appeal. From the evidence we hold that Peters Bros. were innocent purchasers of the plantation, and had paid adequate consideration therefor, and are not in any manner liable to the appellant. The deed from appellant to Pye mentioned only the consideration of $10,000 cash and the two vendor's lien notes, and at the time when Peters Bros. consummated the purchase of the land from Pye they protected themselves as to the two notes by requiring Pye to furnish a proper obligation that the said two notes would be paid and released as they fell due. It is further shown by the evidence that, when Pye assigned the Peters Bros. notes and the lien securing same to Ross, Ross had no notice of appellant's claim; that prior to the final consummation of the sale, and in contemplation of said sale, Ross had paid for Pye $11,000 which Pye owed to third parties, and, in order to enable Pye to remove the lien as against the land by reason of the two $7,500 vendor lien notes, and to remove certain defects as to the title to said land, he joined in an obligation to Peters Bros. to pay off said two notes, to institute suit to clear the title to the land, and to warrant the title to the land to Peters Bros. It further appears that Ross was a heavy indorser or surety upon obligations which Pye owed to other parties, and that Pye was largely indebted for an additional amount to Ross.

It is undisputed that the notes in question were negotiable, taken in good faith and in the ordinary course of trade, and before the notes were due, and with no notice of dishonor or of any fact which would impeach the validity of said notes as between Ross and Pye.

[2] The law is settled in this state that one who in good faith takes by indorsement negotiable paper before its maturity in payment of an existing debt is a purchaser for value and in the usual course of trade. Greneaux v. Wheeler, 6 Tex. 528; Blum v. Loggins, 53 Tex. 137; Alstin's Ex'r v. Cundiff, 52 Tex. 453; Heffron v. Cunningham, 76 Tex. 312, 13 S. W. 259; Gaston & Ayres v. Campbell Co. (Sup.) 140 S. W. 770.

[3] It is also well established that, one having acquired in good faith and for value negotiable paper, it then becomes immaterial whether the subsequent holder of such negotiable paper pay value therefor or had notice at the time he acquired it, if any, after the title passed to him by transfer. Herman v. Gunter, 83 Tex. 66, 18 S. W. 428, 29 Am. St. Rep. 632.

[4] It can make no difference that the transfer was only as collateral security for a debt less in amount than the notes transferred; such transfer is in due course of trade and for a valuable consideration. Kauffman v. Robey, 60 Tex. 308, 48 Am. Rep. 264; Jackson v. Fawlkes (Sup.) 20 S. W. 136. From the foregoing authorities, then, it is apparent that the transfer of the notes by Pye to Ross, together with the lien securing same, was for a valuable consideration and in the due course of trade, and that appellant became an innocent purchaser of same. From what has been said appellant's fourth and sixth assignments of error are overruled.

[5] Appellant's fifth assignment of error complains of the peremptory instruction on the ground that the court instructed the jury to return a verdict against appellant for all of the defendants, and that the judgment as entered was contrary to the verdict of the jury and contrary to the evidence, in that the evidence established a vendor's lien as against Peters Bros. and Ross on the land. It is apparent from what has been said that Peters Bros. and Ross were innocent purchasers for value of the land and notes, and were not in any manner liable to appellant. The record also discloses that judgment by default in favor of appellant as against Pye had been rendered. As to the correctness of such judgment, in the face of the proof that appellant had already instituted a suit against Pye in the district court of Galveston county and recovered judgment upon the $333.33 note, and the alleged contract upon which Pye was to share the proceeds of the sale of said plantation after deducting the $25,000 which represented the purchase price of said land to Pye, we will not now undertake to decide, but hold that, if error was committed in the rendition of said judgment in favor of appellant as against Pye, the error was in favor of appellant, and we see no reason why he should complain, and the assignment of error is overruled.

For the same reason, appellant's tenth and eleventh assignments of error are also overruled.

[6, 7] Appellant has grouped the first, second, and third assignments of error to be considered together. Each of the assignments complains of the action of the trial court in refusing to give to the jury some requested charge. The refused charges are copied in the brief following the third assignment of error. An examination of the record discloses the fact that the three refused charges are no part of the third assignment of error. Each of said assignments complains of a distinct ruling of the trial court and involves different subjects, and are not germane to each other, and are not such assignments as could be considered together. Under the third assignment, appellant submits four separate propositions, none of which refer to any one of the assignments upon which such proposition is based. The statement which appellant subjoined as under each proposition fails to set out the charge which was refused, or to state the substance of such charge. This method of briefing is in violation of the rules governing this court, and the assignments of error are not entitled to consideration. Rule 30 for the government of Courts of Civil Appeals (142 S. W. xiii). Neal v. G., H. & S. A. Ry. Co., 37 Tex. Civ. App. 235, 83 S. W. 402; Hayward Lumber Co. v. Cox, 104 S. W. 403; T. & N. O. Ry. Co. v. Tex. Tram & Lumber Co., 50 Tex. Civ. App. 182, 110 S. W. 141.

Appellant has also grouped the seventh, eighth, and ninth assignments of error to be considered together. An examination of the assignments shows that each complains of a separate ruling of the court and involves different subjects, and are not germane each to the other. The proposition submitted under said three assignments as grouped fails to refer to any one of the assignments. For the reasons as above indicated, these assignments should not be considered.

The appellee Ross has filed certain counter propositions of error, to be considered by this court in the event the judgment of the trial court should be reversed and remanded, for the purpose of keeping H. Masterson a party to the appeal. For the reason that the judgment of the lower court is to be affirmed, the counter assignments will not be considered.

Not finding any reversible errors in the record, the judgment is affirmed.

HARPER, C. J., did not sit.