## THE PRAETORIANS v. REDMON.

### No. 13334.

Court of Civil Appeals of Texas.
Fort Worth.

March 6, 1936.

Rehearing Denied and Motion for Leave to
Withdraw and Amend Denied
April 17, 1936.

608

J. W. Randall and Randall & Gray, all of Dallas, for appellant.

Lee T. Johnson, Jr., Hughes & Monroe, and Johnson & Tomlinson, all of Dallas, for appellee.

BROWN, Justice.

The appellee, Mrs. Eula E. Redmon, recovered a judgment against appellant, The Praetorians, on an insurance policy written on the life of her husband.

Having appealed from such judgment, we find one proposition in appellant's brief, as follows:

"It is the duty of the trial court to construe the contract the parties have entered into in plain and unambiguous language according to its provisions, and

it is error for the court to make for the parties another and different agreement or to give one of them advantages not authorized or contemplated by the contract. (Germane to Assignments of Error Nos. 1 to 5 inc.)"

The so-called proposition is a mere "abstraction," and does not point out the action of the court and the error committed. Furthermore, it is multifarious and connects the two matters, thus too generally complained of, disjunctively.

We do not feel that it is our duty to consider the proposition. Lamar-Delta County Levee Dist. v. Dunn (Tex.Com. App.) 61 S.W.(2d) 816.

We find five assignments of error in the brief, as follows:

"1. The court erred in rendering judgment for the plaintiff, Mrs. Eula Redmon, because under the undisputed evidence, agreed statement of facts and the contract of insurance she was not entitled to recover in any amount in excess of $82.31. (Tr. p. 12.)

"2. The court erred in reading into the contract of insurance sued upon provisions that were not there, so as to permit the plaintiff, Mrs. Eula E. Redmon, to recover.

"3. The court erred in rendering judgment for the plaintiff, Mrs. Eula E. Redmon, for double the face of the contract of insurance under the Double Indemnity Clause, for the reason that under the undisputed evidence and agreed statement of facts the contract of insurance had lapsed and the Double Indemnity Clause was not applicable, and the plaintiff was not entitled to recover thereunder. (Tr. p. 12.)

"4. The court erred in applying the reserve for a portion of the sixth policy year to the payment of premiums, because under the contract in evidence the plaintiff was entitled to no application of any accumulated reserve before the end of a policy anniversary or year.

"5. The court erred in applying the accumulated reserve on the contract of insurance after lapse of the contract, which had accumulated during a portion only of a contract year or anniversary, to the payment of monthly premiums to keep the full face of the contract in force as long as such reserve would carry it, when under the plain terms of the contract of insurance the application of such reserve to the purchase of extended insurance, if any the plaintiff was entitled to, should have carried the face of the contract reduced in proportion as the debt due bears to the total reserve, for a definite period of time, not less than five nor more than six years. (S.F., Ex.B.)"

The only "statement" found in the brief follows the above-mentioned "proposition," and is as follows:

"This cause comes to this Honorable Court on an agreed statement of the case and involves essentially but one question, towit, the construction of a portion of a contract of insurance under the head of 'Non-Forfeiture Privileges.'

"It is admitted:

"(a) That the insured had borrowed the entire loan value of the policy up to and as of May 28, 1933, the end of the fifth anniversary of the policy, thus completely depleting the reserve as of that date. (S.F., p. 7, Ex.B, Table of Non-Forfeiture Values.)

"(b) That the premiums were paid to September 1, 1933, and none thereafter, and on which date the policy lapsed for non-payment of premiums. (S.F., pp. 2, 4 and 5.)

"(c) That the insured died on October 11, 1933, (S.F. p. 3), at which time the policy was lapsed for non-payment of premiums for September and October, 1933. (S.F., pp. 4 and 5.)

"(d) That the policy contains the following provisions under the head of 'Non-Forfeiture Privileges':

" 'Non-Forfeiture Privileges.'

" 'Within one month after any anniversary date thereof, or at any time within thirty days after default in the payment of dues, and after two full years' dues shall have been paid hereon, the insured shall be entitled to select one of the following surrender options:

" 'Option 1. Surrender the certificate for its cash value.

" 'Option 2. Surrender the certificate for paid-up life insurance.

" 'Option 3. Have the certificate endorsed as extended term insurance.

" 'The values under each option are shown in the table below if there is no indebtedness against this certificate. Any indebtedness will be deducted from the cash value if option 1 is selected, and will

reduce the amounts under either option **2** or **3** in the proportion that the indebtedness bears to the cash value, but the extended term period will remain the same as set out in the table. When the total indebtedness exceeds the cash surrender value of this certificate all values hereunder shall automatically cease and this contract will be of no further force or effect.

" 'Option 3 shall become effective automatically in the event the insured fails to make a selection during the sixty days after default in payments.

" 'Extended insurance when effective shall date back to and extend from the first of the month when default occurred, and no accident or disability benefit shall be available under such paid-up or extended insurance.

" 'Table of Non-Forfeiture Values.

| End of year | Cash of Loan Value | Paid-up Life Insurance | Extended Years | Insurance Months |
|---|---|---|---|---|
| 2 | $20.00 | $00.00 | 0 | 0 |
| 3 | 39.00 | 82.00 | 2 | 10 |
| 4 | 60.00 | 122.00 | 4 | 0 |
| 5 | 81.00 | 161.00 | 5 | 0 |
| 6 | 103.00 | 200.00 | 6 | |
| 7 | ...... | ...... | .. | .. |

Etc.

" 'The loan values in the table for any year set opposite are available any time during the year if all dues for said year have been paid. All other values apply as of the end of the year.' "

In the first place, this is not such a "statement from the record" as is necessary to point out what took place in the trial court and why such action constitutes error. We are not called upon to search the entire record to see what was done on the trial and whether or not the trial court erred. It is the duty of the appealing party to distinctly set forth what he considers was error committed by the trial court, and to support such "point," or "proposition," by a clear statement from the record which will disclose that the matter complained of occurred on the trial. The entire "statement," when read word for word, does not advise us what the trial court did that is supposed to be erroneous.

Furthermore, the "statement" is not a correct statement, in that the appellant asserts that it is, "admitted" that: "On which date (September 1, 1933) the policy lapsed for non-payment of premiums. (S. F. pp. 2, 4 and 5.)" An examination of the statement of facts as to the pages cited for the "admission" discloses that no such admission was made.

In the succeeding paragraph, appellant states that "it is admitted" that: "At which time (October 11, 1933) the policy was lapsed for non-payment of premiums for September and October, 1933. (S. F., pp. 4 and 5.)" An examination of the statement of facts as to the pages cited for the "admission" discloses that no such admission was made.

We decline to consider assignment of error No. 1, because appellant's brief does not contain a statement from the record showing that "under the undisputed evidence, agreed statement of facts and the contract of insurance she (Mrs. Redmon) was not entitled to recover in any amount in excess of $82.31."

We decline to consider assignment of error No. 2 because appellant's brief does not contain a statement from the record showing that the "trial court read into the contract of insurance sued upon provisions that were not there, so as to permit the plaintiff, Mrs. Eula E. Redmon, to recover."

We decline to consider assignment of error No. 3, because appellant's brief does not contain a statement from the record showing that the "trial court rendered judgment for the plaintiff for double the face of the policy and that such judgment is erroneous because under the undisputed evidence and agreed statement of facts the contract of insurance had lapsed, and the double indemnity clause was not applicable, and plaintiff was not entitled to recover thereunder."

We decline to consider assignment of error No. 4, because appellant's brief does not contain a statement showing that "the trial court applied the reserve for a portion of the sixth policy year to the payment of premiums, erroneously, because under the contract in evidence the plaintiff was entitled to no application of any accumulated reserve before the end of a policy anniversary or year."

We decline to consider assignment of error No. 5 because appellant's brief does not contain a statement from the record showing that the trial court committed the acts complained of, or that, under the terms

of the insurance contract, the plaintiff was only "entitled to the face of the contract reduced in proportion as the debt due bears to the total reserve, for a definite period of time, not less than five nor more than six years."

Much complaint is now made and has been made, since Shakespeare uttered his immortal indictment, of "the law's delay." Every brief presented to an appellate court should be so complete that the specific matter complained of is immediately brought to the attention of the court by a clear "statement," and the references to the record so made that the "statement" may be quickly verified, if occasion requires verification.

Appellate courts should not be compelled to read the entire record under each assignment of error, in order to ascertain whether or not the assignment of error is supported by the record.

■ Finding no fundamental error, the judgment of the trial court is affirmed. Freeman v. Bennett (Tex.Civ.App.) 195 S.W. 238, writ refused; First Nat. Bank v. Hardtt (Tex.Civ.App.) 204 S.W. 712, writ refused; Dubois v. Lowery (Tex. Civ.App.) 205 S.W. 858, writ refused; Prince Line, Ltd., v. Steger (Tex.Civ.App.) 210 S.W. 223, writ refused.

On Motion for Rehearing.

■ We are unable to bring ourselves to the point of believing that the Legislature, in amending articles 1757 and 1844, R.C.S. (Vernon's Ann.Civ.St. arts. 1757, 1844), ever intended to deny the Supreme Court of Texas the right to adopt wholesome rules for the proper presentation of causes on appeal, or that the Legislature has by such amended statutes actually denied that right.

Article 1844, as amended (Vernon's Ann. Civ.St. art. 1844), is in all essential particulars the same as the former statute, excepting only that the necessity for filing assignments of error in the trial court has been done away with, and where a motion for a new trial has been filed, the appealing party is not restricted to the contents of such motion in presenting his assignments of error.

■ Article 1757, as amended (Vernon's Ann.Civ.St. art. 1757), simply undertakes to set forth the essentials of a proper brief. It stipulates that a proper brief shall contain a statement disclosing the nature and result of the suit, the error or errors upon which the appeal is predicated, the authorities relied upon, and a statement, "and/or argument on the errors assigned."

As a people, we are prone to take up and adopt new expressions and phrases. Some lawyer, a few years ago, used this rara avis "and/or," and since that day thousands have used it where its use was either meaningless or contradictory. There is no doubt in our minds that the Legislature meant to stipulate that there must be a "statement" in the brief which discloses the matters upon which the appealing party relies as constituting error. This "statement" must be taken from the record made in the trial of the suit. And the Legislature likewise meant to stipulate that the appealing party could incorporate an argument in his brief.

To construe the amended statute to mean that the appealing party could either incorporate a "statement" in his brief, or "an argument," just as he wills, or desires, is tantamount to saying that the Legislature, by such amended statute, has left the matter of the manner and form of briefing causes, on appeal, to the will, or whim, of each individual appealing party, so long as the brief contains the subject-matter mentioned in the statute.

The Legislature meant no such thing, and, to thus construe the amended statute, means that the labors of the appellate courts have been tremendously increased rather than in some measure relieved.

In the face of the hue and cry with which we have been confronted, in recent years, complaining of the failure to dispose of causes on appeal with reasonable dispatch, we are loathe to believe such was the purpose of the lawmakers.

The fact that the statute (Vernon's Ann. Civ.St. art. 1757) contains the following proviso: "Provided, however, that the Supreme Court may adopt rules with reference to the form and time of filing of briefs generally, but not inconsistent with the provisions hereof," does not destroy our conclusions, but, in our judgment, confirms them.

The Supreme Court has never formulated and promulgated rules that are inconsistent with any statute, and the rules now in force are assistant rather than inconsistent.

■■ We do not believe that a brief which does not contain an assignment of error that distinctly specifies the ground, or asserted error, on which the appealing party relies, is sufficient, or should be considered. Neither do we believe that an assignment of error which is not a proposition of law

612

within itself, should be considered, unless it is supported by a proposition of law that clearly and distinctly points out why the alleged error constitutes an error on the part of the trial court, or the Court of Civil Appeals.

██ And we do not believe that an assignment of error which is not supported by a plain statement, taken from the record, disclosing the acts, rulings, and happenings on which the appealing party relies to show error committed, should be considered.

██ We do not believe that it is our duty to search the entire clerk's transcript and the entire statement of facts, in order to ascertain whether or not an assigned error is in fact an error, unless the error is fundamental, and we are called upon to look for fundamental error.

If in fact the Legislature, by the amended statutes, here discussed, intended to say to the Supreme Court of Texas, "You shall not formulate and promulgate rules, with reference to the form, the essentials, and the proper presentation of causes on appeal, but every appellant shall be permitted to file and have considered his briefs, if they contain the subject matter mentioned in this statute, regardless of the manner and form in which it is presented," then the sooner this is known the sooner is it manifestly necessary that the lawmakers take appropriate action for the investiture of the Supreme Court with the authority that is essentially necessary for an expeditious and orderly dispatch of causes on appeal.

Section 25, of article 5 of the State Constitution, invests the Supreme Court with the authority to make the rules for all courts, "to expedite the dispatch of business therein," and limits this power to rules "not inconsistent with the laws of the State."

These rules are for our government and guidance and will be followed until we are otherwise directed by the court of last resort.

The motion for rehearing is overruled.

On Appellant's Motion for Leave to Withdraw and Amend its Brief and to Refile the Same.

██ Appellant presents us with a motion to be permitted to withdraw his brief and file amended brief in lieu thereof.

This motion comes after submission and after the court has considered the case,

delivered its opinion, and rendered judgment.

We cannot grant the motion and set such a precedent, under the circumstances.

██ It is settled that defects and omissions, in the record, cannot be cured or supplied, after a cause is submitted. The Supreme Court permitted amendments to the record, for the last time, after submission, as is reflected in Houston & T. C. Ry. Co. v. Parker, 104 Tex. 162, 135 S.W. 369, and Patrick v. Pierce, 107 Tex. 620, 183 S. W. 441. Since these decisions, under rule 22, there can be no amendments of the record, after a cause is submitted.

The appellant makes application for the record, and the defects, or omissions, may be occasioned by the clerk, or person who prepares the record, but appellant's brief is wholly prepared by him.

The statutes and rules governing the preparation of briefs are not difficult to understand, and may be substantially complied with by the average lawyer. In Glover v. Houston Belt & Terminal Railway Co. (Tex.Civ.App.) 163 S.W. 1063, 1064, Mr. Justice Higgins uses the following language: "After defendant in error had filed its brief in this court, the plaintiff in error filed what is styled a 'Written Argument and Supplemental Brief of Plaintiff in Error.' We will consider only the argument contained in same. In great part it is an amendment to the original brief filed, *undertaking to re-present and re-brief various assignments of error*. This is not such an amendment to the original brief as is permitted by rule 38 (142 S.W. xiii), and consideration thereof will be limited as stated. Peck v. Morgan [Tex.Civ.App.] 156 S.W. 917 [writ refused]; Greene Gold-Silver Co. et al. v. Silbert [Tex.Civ.App.] 158 S.W. 803 [writ refused]." (Italics ours.) Neal v. Galveston, H. & S. A. Ry. Co., 37 Tex. Civ.App. 235, 83 S.W. 402, writ expressly denied.

Should we grant this motion and permit appellant's briefs to be withdrawn and new briefs filed, in every case brought before us, where there is a defective brief filed, we will be confronted with a similar motion, and the orderly dispatch of business will be rendered impossible.

While we regret the necessity for so doing, the motion is overruled.